**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JOHN OLIVER SNOW,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>DAVID A. MAR, *et al.,*<br><br>　　　　　　　　　Defendants. | 3:14-cv-00290-RCJ-VPC<br><br>**REPORT AND RECOMMENDATION**<br>**OF U.S. MAGISTRATE JUDGE** |

　　　　This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion to dismiss (#54). Plaintiff opposed (#64), and defendants replied (#65). For the reasons stated below, the court recommends that the motion be denied.

## I.    PROCEDURAL BACKGROUND

　　　　John Oliver Snow ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). Presently, plaintiff is incarcerated at High Desert State Prison in Indian Springs, Nevada, but the alleged events underlying his claims occurred while he was incarcerated at Nevada State Prison ("NSP") in Carson City, Nevada. Proceeding *pro se*, plaintiff brings civil rights clams under 42 U.S.C. § 1983 against Correctional Medical Services, Inc., and the following NDOC officials: Dr. David A. Mar, Nurse Linda Klump, Assistant Director E.K. McDaniel, and Medical Director R. Aranas. (#3 at 2–3.) Plaintiff seeks injunctive relief and compensatory and punitive damages. (*Id.* at 9.)

　　　　On February 16, 2015, the District Court entered a screening order pursuant to 28 U.S.C. § 1915, and allowed plaintiff to proceed against Mar, Klump, McDaniel, Aranas, and

Correctional Services, Inc.,[1] for deliberate indifference to plaintiff's serious medical needs (#4). At that time, the court stayed the case for ninety days to allow for an early mediation conference between plaintiff and defendants. (*Id.*) The parties were ultimately unable to settle, and this court issued an *in forma pauperis* order commencing litigation (#28).

Defendants now move to dismiss the complaint on the grounds that plaintiff's claims are barred by the statute of limitations.

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for failure to state a claim upon which relief may be granted. The ruling is a question of law. *North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983). The court grants dismissal when the complaint fails to "state a claim for relief that is plausible on its face[,]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or fails to articulate a cognizable legal theory, *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015). Although the complaint need not contain detailed factual allegations under the pleading requirements of Rule 8(a), it must offer more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

When analyzing a motion under Rule 12(b)(6), courts accept as true all well-pled factual allegations, set aside legal conclusions, and verify that the allegations state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The complaint is viewed in the light most favorable to the plaintiff. *Chubb Custom Ins. Co. v. Space Systems/Loral Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). This is particularly true in the case of *pro se* parties, whose pleadings must be liberally construed. *Hebbe v. Pliler*, 627 F.3d 338, 341–42 (9th Cir. 2010).

As a general rule, the court may only consider the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). This rule applies with equal force to dismissal based on the statute of

---

[1] On December 4, 2015, the District Court entered an order to dismiss Correctional Medical Services, Inc. without prejudice, for failure to file proof of proper service pursuant to Fed. R. Civ. P. 4(m) (#67).

1  limitations; accordingly, a court may only grant such a motion to dismiss "when the running of
2  the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art*
3  *at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2009) (internal quotation omitted).  If a party submits
4  additional materials in support of or in opposition to a motion to dismiss, and the district court
5  relies on those materials, the motion is converted into a motion for summary judgment. *Anderson*
6  *v. Angelone*, 86 F.3d 932, 934 (1996); *see also* Fed. R. Civ. P. 12(d).

7  Here, defendants' argument in favor of dismissal relies on declarations, grievance records,
8  and prior testimony attached to their motion. (*See* #54 at 4–5; #54-1 to #54-5.)  Plaintiff's
9  opposition likewise relies on supplemental materials.  (*See* #65 at 5–7, 9–47.)  In an action in
10 which a prisoner is the *pro se* plaintiff, prior to considering additional materials the court must
11 inform the plaintiff of its intent, advise plaintiff of the requirements of Fed. Rule Civ. P. 56, and
12 provide him or her an opportunity to present all pertinent materials. *Angelone*, 86 F.3d at 934–35
13 (citing *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988)).  On August 4, 2015, the
14 parties in this case were provided notice consistent with the requirements of *Klingele v.*
15 *Eikenberry* (#55).  In pertinent part, the court's minute order stated:

16 > Pursuant to the last sentence in Fed. R. Civ. P. 12(b), if evidence is submitted with a motion to dismiss and considered by the court, then the motion will be treated as a motion for summary judgment. . . . This notice is issued, in part, to alert the plaintiff that if defendants have submitted evidence in support of a motion to dismiss or a motion for judgment on the pleadings, then the court may treat the pending motion as a motion for summary judgment. If the court grants summary judgment, then judgment may be entered against plaintiff and this lawsuit will end without trial.

21 (#55 at 1.)  From this point forward, the court construes defendants' motion to dismiss as a
22 motion for summary judgment, and will consider the additional materials included with the
23 parties' filings.

24 **B.  Motion for Summary Judgment**

25 Summary judgment allows the court to avoid unnecessary trials, *Nw. Motorcycle Ass'n v.*
26 *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994), and is appropriately granted when the
27 record demonstrates that "there is no genuine issue as to any material fact and the movant is
28

entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could

reasonably render a verdict in the non-moving party's favor." *Id.* (internal citations and quotations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. The Ninth Circuit follows a "policy of liberal construction in favor of *pro se* litigants." *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998). Accordingly, for purposes of opposing summary judgment, a reviewing court will consider as evidence the allegations a *pro se* litigant offers in motions and pleadings, where the allegations are based on personal knowledge and set forth facts that would be admissible into evidence, and where the litigant attested under penalty of perjury that they are true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). Nevertheless, mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

### III.   DISCUSSION

Plaintiff's deliberate indifference claims stem from the medical treatment he received while incarcerated at NSP, which he describes as follows. Plaintiff was waiting for hip replacement surgery in the fall of 2010. (#3 at 3.) From March 2008 through August 2010, plaintiff had been seen monthly for physical examinations by NSP medical providers, with Dr. Mar acting as plaintiff's primary care provider. (#64 at 2; #3 at 3.) Then, on November 19, 2010, plaintiff suffered from a cardiac arrest. (*Id.*) Plaintiff later learned that in October, 2009, Mar had expressed concern to Dr. Long about the effect of the prospective hip surgery on plaintiff's heart condition. (#64 at 19; #45-5 at 6.) Despite this concern, Mar did not inform plaintiff of the condition or suggest treatment. (#3 at 3–5.) In August, 2010, Nurse Klump conducted an EKG on plaintiff's heart, and likewise failed to inform plaintiff of any heart condition. (*Id.*) Plaintiff insists that Mar and Klump followed orders from McDaniel, who allegedly informed medical staff not to waste funds on treating death row inmates with serious illnesses. (*Id.*) Plaintiff

1  maintains that Medical Director Aranas and Correctional Medical Services, Inc., also cooperated
2  with McDaniel's policy.  (*Id.*)

3  Plaintiff submitted the complaint to commence this action on June 3, 2014.  (#4 at 9.)
4  Defendants argue that the complaint comes too late, as his claims are now barred by the statute of
5  limitations.  (#54 at 4–5.)  Applying a two year limitations period, the statute of limitations
6  stretches back to June 3, 2012.  Defendants concede that plaintiff is entitled to equitable tolling
7  for the period in which grievances were pending, which adds, by their calculation, a maximum of
8  484 days.  (#65 at 3.)  Therefore, defendants argue that plaintiff's claims must have accrued since
9  February 5, 2011; because his claims accrued no later than November 19, 2010, they are
10 untimely.  (*Id.* at 3, 5.)  Plaintiff challenges defendants' proffered accrual date and equitable
11 tolling analysis, but does not offer alternative calculations.  (#64 at 4–8.)  Nevertheless, based on
12 the current record, the court concludes that there is a triable issue of fact as to whether the statute
13 has run on plaintiff's claims.

14 **A.     Statute of Limitations Standard**

15 42 U.S.C. § 1983 does not contain a statute of limitations.  Instead, federal courts apply
16 the forum state's statute of limitations for personal injury claims.  *Comm. Concerning Cmty.*
17 *Improvement v. City of Modesto*, 853 F.3d 690, 701 n.3 (9th Cir. 2009).  Thus, in Nevada, the
18 statute of limitations for a § 1983 claim is two years.  *Reed v. Nev. Dep't of Corr.*, No. 3:14–cv–
19 00313–MMD–VPC, 2015 WL 5092692, at *5 (Aug. 27, 2015); Nev. Rev. Stat. § 11.190(4)(e).
20 The cause of action accrues and the statute of limitations begins to run "when the plaintiff knows
21 or has reason to know" of the injury that is the basis for the § 1983 claim.  *Canatella v. Van De*
22 *Kamp*, 486 F.3d 1128, 1133 (9th Cir. 2007) (internal quotation omitted); *see also Bagley v. CMC*
23 *Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991).  However, because the Prison Litigation
24 Reform Act, 42 U.S.C. § 1997e(a), requires inmates in Nevada to exhaust their claims through the
25 NDOC's grievance process prior to filing suit in federal court, the statute is tolled during the
26 pendency of the grievance process.  *See Brown v. Valoff*, 422 F.3d 926, 942–43 (9th Cir. 2005);
27 *Wisenbaker v. Farwell,* 341 F. Supp. 2d 1160, 1165 (D. Nev. 2004).  As such, events underlying a
28

1  § 1983 action must fall within two years of the filing date, plus the number of days between the
2  filing of a grievance and prison officials' final response.

3    **B.    Analysis**

4    Where an inmate asserts a claim for deliberate indifference to a medical need, as plaintiff
5  does here, the claim accrues when the inmate knows or has reason to know of defendants'
6  deliberate indifference. *TwoRivers v. Lewis*, 174 F.3d 987, 991–92 (9th Cir. 1999). Plaintiff
7  concedes in his opposition that his attorney told him that he had a cardiac problem in August
8  2010. (#64 at 2, 7.) Plaintiff made a similar admission in a deposition taken for an earlier
9  proceeding, *Snow v. McDaniel*, 3:08-cv-00046-RCJ-VPC, which is now offered by defendants.
10 When asked about his heart condition, plaintiff testified: "The first time I heard anything about
11 my heart being bad was August 2010, talking to Mr. Picker on the telephone." (#54-5 at 4.) The
12 deposition proceeds to clarify that the Attorney General's office had told Mr. Picker, plaintiff's
13 then-attorney, about a memo between Dr. Mar and Dr. Long in October, 2009, which stated that
14 plaintiff was unable to have hip replacement surgery due to a heart condition. (*Id.* at 4–6.)
15 Plaintiff does not dispute the authenticity of the deposition, but rather directs the court to take
16 notice of defendants' exhibit. (#64 at 7.)

17    Plaintiff describes his deposition testimony as a "sudden outburst," arguing that the
18 August 2010 conversation did not impart sufficient knowledge of his heart condition or
19 defendants' role to trigger the statute of limitations. (*Id.* at 1–2.) He insists that he did not "know
20 for sure" of defendants' deliberate indifference until May 29, 2012, when he saw a copy of Mar's
21 memo. (#64 at 3.) Indeed, plaintiff's deposition testimony reflects that he reacted conversation
22 with disbelief, telling his attorney that "there's nothing wrong with my heart. . . . [T]hey would be
23 treating me if something was wrong with my heart." (*Id.* at 6.) However, a plaintiff need not
24 know *all* the facts surrounding an incident for a cause of action to accrue. Rather, the statute of
25 limitations "begins to run once a plaintiff has knowledge of the 'critical facts' of his injury, which
26 are 'that he has been hurt and who has inflicted the injury.'" *Bibeau v. Pac. NW Research Found.*
27 *Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999) (quoting *United States v. Kubrick*, 444 U.S. 111, 122
28

(1979)). A May 29, 2012 accrual date would also run afoul of the well-established principle that a plaintiff must exercise due diligence in discovering the critical facts of his or her injury. *Id.* at 1108; *see also Kubrick*, 444 U.S. at 123–24. "[A] plaintiff who did not actually know that his rights were violated will be barred from bringing his claim after the running of the statute of limitations, if he should have known in the exercise of due diligence." *Bibeau*, 188 F.3d at 1108.

While the court thus rejects the contention that plaintiff's claims did not accrue until May 29, 2012, it remains unconvinced that the accrual date is early as August, 2010. Viewing the evidence in the light most favorable to plaintiff, as the court must, plaintiff's monthly medical examinations provided consistent assurance at that time that his heart was fine. It is clear from the record, however, that plaintiff knew or should have known of defendants' deliberate indifference on November 19, 2010. The heart attack surely alerted plaintiff to the existence of some kind of heart condition. Given plaintiff's prior conversation with Mr. Picker, it should also have confirmed to plaintiff that Dr. Mar had prior knowledge of his condition and had failed to take appropriate action.

Assuming an accrual date of November 19, 2010, plaintiff had two years plus the number of days needed to exhaust his claims through NDOC's grievance process to commence this action. Plaintiff raised his claims to NDOC officials in two separate grievance logs: number 20062946055 ("#46055") and number 20062953297 ("#53297").

Plaintiff filed an informal grievance in log #46055 on May 29, 2012. (#54-1 at 2–7.) The grievance was procedurally rejected as untimely on July 18, 2012. (*Id.* at 8.) Plaintiff then filed a first level grievance, and received a procedural rejection on November 20, 2012. (*Id.* at 9.) After filing a second level grievance, plaintiff was notified that it too was procedurally rejected on September 25, 2013. (*Id.* at 10–11.) 484 days elapsed between May 29, 2012 and September 15, 2013.

On November 20, 2012, the same day plaintiff received the rejection of his first level grievance in log #46055, plaintiff filed another informal grievance addressing the same matter. In his opposition, plaintiff describes some overall confusion regarding the grievance process, and

8

characterizes this second informal grievance, assigned #53297, as a resubmission of his prior grievance. (*See* #64 at 4.) The informal grievance was rejected on the merits on January 3, 2013. (#54-2 at 2–3.) Plaintiff filed a first level grievance, and it was rejected on the merits on July 17, 2013. (*Id.* at 7–8.) On September 26, 2013, plaintiff filed a second level grievance. (*Id.* at 8.) That grievance was also rejected on the merits on December 13, 2013, ending the formal grievance process for #53297. (*Id.* at 9–10.) 388 days elapsed between November 20, 2012 and December 13, 2013.

Defendants contend that plaintiff is only entitled to equitable tolling for the period in which grievance log #53297 was pending, as the procedural rejections demonstrate that plaintiff failed to correctly follow the grievance procedure as to #46055. (#54 at 4.) In the alternative, they maintain that if the limitations period is tolled for #46055, plaintiff's claims are still untimely. (#65 at 3.) On that point, defendants appear to consider both grievance logs individually, tolling the limitations period for *either* log #46055 *or* #53297, but not both. (*See id.*)

The court finds neither approach persuasive under the circumstances. The chronology of events strongly suggests that, by re-filing an informal grievance on November 20, 2012, plaintiff was attempting to cure the procedural deficiencies flagged in prior grievance responses. It was NSP officials, and not plaintiff, who assigned the grievance a new log number. Plaintiff continued to file grievances under both logs, likely to cover all his bases. To begin the tolling period with #53297, or to consider the effect of the two logs individually, would punish plaintiff for making full use of the mandatory grievance process. Further, the court is concerned that defendants' tolling strategy threatens to turn the exhaustion requirement into a game, in which prison officials will always hold the upper hand.

Arguably, it is appropriate here to consider the two grievance logs as one; the logs grieve the same matter, and the procedural rejection of one over the other appears arbitrary. Plaintiff filed his first informal grievance on May 29, 2012, and received a final rejection on the merits 563 days later on December 13, 2013. Adding 563 days to the two year statute of limitations,

plaintiff's complaint is timely so long as his claims arose after November 18, 2010. Because the court has concluded that the accrual date may be as late as November 19, 2010, defendants are not entitled to summary judgment at this time.

## IV.    CONCLUSION

For good cause appearing and for the reasons stated above, the court recommends that defendants' motion to dismiss/motion for summary judgment (#54) be denied.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion to dismiss (#54) be **DENIED**.

**DATED**: January 26, 2016.

_____
**UNITED STATES MAGISTRATE JUDGE**