UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JOHN OLIVER SNOW,

                   Plaintiff,

v.

DAVID A. MAR et al.,

                   Defendants.

3:14-cv-00290-RCJ-VPC

ORDER

Plaintiff John Snow, a prisoner in the custody of the Nevada Department of Corrections ("NDOC"), has sued Defendants in this Court under 42 U.S.C. § 1983. Pending before the Court is a motion for summary judgment.

I.     FACTS AND PROCEDURAL HISTORY

Plaintiff had a heart attack in NDOC custody while awaiting hip replacement surgery. He alleges Defendant Dr. David Mar knew Plaintiff had a heart problem 13 months before the heart attack but did not inform Plaintiff of the problem because he was under orders from Defendant NDOC Assistant Director E.K. McDaniel not to expend efforts to save death row inmates. Plaintiff also made allegations against the NDOC Medical Director and a nurse. The Court permitted an Eighth Amendment claim for deliberate indifference to serious medical needs to proceed past screening but dismissed the claim of medical malpractice. Upon recommendations by the Magistrate Judge, the Court denied motions to dismiss and for summary judgment under the statute of limitations but granted motions to dismiss on the merits as to the NDOC Medical

Director and the nurse. The Court denied a motion for a preliminary injunction, noting that Plaintiff's condition was being monitored, Plaintiff had been prescribed medication, and Plaintiff's disagreements with the course of treatment did not give rise to a deliberate indifference claim as a matter of law. The remaining Defendants have filed a motion for summary judgment based on qualified immunity, as well as a motion for leave to file the successive motion for summary judgment, which Plaintiff has not opposed. The motion is fully briefed.

## II.  SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the nonmoving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even if the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

///

///

///

3

## III. ANALYSIS

### A. Deliberate Indifference

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Assuming the medical need is "serious," a plaintiff must show that the defendant acted with deliberate indifference to that need. *Id.* "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). It entails something more than medical malpractice or even gross negligence. *Id.* Deliberate indifference exists when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted).

Critically, "a difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989), overruled on other grounds by *Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014). Instead, to establish deliberate indifference in the context of a difference of opinion between a physician and the prisoner or between medical providers, the prisoner "'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" *Id.* at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In other words, where there has been some arguably appropriate treatment, deliberate indifference cannot be established merely by showing disagreement with the physician

4

but only by showing that the defendant chose a course of treatment knowing that it was inappropriate. Put differently, a court cannot substitute its judgment for that of a medical professional, but it can examine a medical professional's good faith in selecting a course of treatment.

B. **Qualified Immunity**

To state a claim under § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). There is no respondeat superior liability under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Natural persons sued in their individual capacities may enjoy qualified immunity against claims of constitutional violations. *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985). An official is not entitled to qualified immunity if: (1) there has been a constitutional violation; and (2) the state of the law was clear enough at the time of the violation that a reasonable person in the defendants' position would have known his actions violated the plaintiff's rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts have discretion to address the second prong of the *Saucier* test first in order to avoid unnecessary constitutional rulings. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A "clearly established" right for the purpose of qualified immunity is one that has been announced by the Supreme Court or the relevant Court of Appeals, i.e., binding authority. *Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004).

> [A] plaintiff need not find a case with identical facts in order to survive a defense of qualified immunity; obviously, one can imagine a situation where the officials' conduct is so egregious that no one would defend it, even if there were no prior holding directly on point. . . . But it should be equally obvious that the farther afield existing precedent lies from the case under review, the more likely it will be that the officials' acts will fall within that vast zone of conduct that is perhaps regrettable but is at least arguably constitutional. So long as even that much can be said for the officials, they are entitled to qualified immunity.

*Hamby v. Hammond*, 821 F.3d 1085, 1095 (9th Cir. 2016) (citation omitted).

C.  **The Present Motion**

Plaintiff alleges that Dr. Mar "had prior knowledge of [Plaintiff's] cardiac problem for 13 months before [Plaintiff's] cardiac attack" but failed to inform Plaintiff. (Compl. 3, ECF No. 4). The Court permitted the claim to proceed past screening but notes the sufficiency of the allegations is a close question. Plaintiff does not allege the nature of the "cardiac problem" Dr. Mar of which Dr. Mar was allegedly previously aware or how any particular treatment might have prevented his heart attack.

The present motion elucidates the allegations. Defendants note that in preparation for his double hip replacement surgery in 2009, Dr. Mar recommended cardiac testing to assess whether he could survive the procedure. Dr. Mar delayed approval for surgery while waiting for results from the cardiologist. Plaintiff received his electrocardiogram test on February 18, 2010. Due to hypertension and an irregular heartbeat, the surgery was precluded. Dr. Mar met Plaintiff again on August 5, 2010 and was concerned that his "racing heartbeat" was a result of "dissolved medications." (10:21–24, ECF No. 118). Plaintiff's medications were continued. When Plaintiff reported chest pains on the night of November 19, 2010, he was rushed to a local emergency room and given nitroglycerine, aspirin, and morphine; he was kept for observation and given a cardiac stent on November 22, 2010.

Defendants argue that between initial approval for surgery and his heart attack, Dr. Mar monitored Plaintiff's condition and continued his hypertension medications. Defendants note that Dr. Mar likely saved Plaintiff's life by postponing his surgery given his irregular heartbeat and could not have predicted a heart attack based purely on an irregular heartbeat and hypertension (which was already being treated). They argue that it was not clearly established that continuing hypertension medications and monitoring was not enough to avoid an Eighth Amendment violation. They also argue that McDaniel had no personal participation that could implicate him

under § 1983, such as directing Dr. Mar to follow a particular course of treatment in Plaintiff's case or via any generally applicable policy he enforced that Dr. Mar applied in this case.

The Court notes that it is not impossible Dr. Mar could have acted with deliberate indifference as to a need for further treatment despite acting appropriately in postponing Plaintiff's surgery. But the Court agrees it was not clearly established that continuation of hypertension medication and monitoring was constitutionally inadequate under the present circumstances. As soon as Plaintiff presented with symptoms of a heart attack, he was rushed to the hospital for appropriate treatment. The Court cannot say that an abnormal electrocardiogram so clearly indicated a preventative cardiac stent or some other invasive treatment that Defendants were constitutionally indifferent in taking a different course of action. That is a matter of expert medical opinion that does not implicate the Eighth Amendment. Plaintiff adduces no evidence counseling a different result. For example, there is no evidence he ever presented with symptoms of a heart attack yet was refused treatment. Nor is there any evidence indicating that Dr. Mar subjectively believed there was an imminent risk of a heart attack yet failed to intervene. Plaintiff argues that the Court of Appeals reversed this Court's grant of summary judgment in a related case (No. 3:08-cv-46), but that case concerned deliberate indifference based on a previous refusal to approve hip replacement. There were no claims in that case arising out of Plaintiff's heart condition. A jury returned a verdict for the defendants, anyway, so even if that case concerned the issues to be determined here, it would require summary judgment for Defendants.

///

///

///

///

///

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Leave to File (ECF No. 140) is GRANTED.

IT IS FURTHER ORDERED that the fifth Motion for Appointment of Counsel (ECF No. 144) is DENIED.

IT IS FURTHER ORDERED that the Motion for Appointment of Investigator and Expert Witnesses (ECF No. 153) is DENIED.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 141) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

IT IS SO ORDERED.

Dated this 7st day of August, 2018.

_____
ROBERT C. JONES
United States District Judge